UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MOORTHY S. RAM, | * | |
| | * | |
| Plaintiff, | * | |
| | * | Civil Action No. 15-10275-MGM |
| v. | * | |
| | * | |
| D. MICHAUD, et. al., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER RE: MOTION TO DISMISS
(Dkt. No. 25)

January 21, 2016

MASTROIANNI, U.S.D.J.

      Plaintiff, Moorthy S. Ram, proceeding *pro se*, brings this action against several employees at the Federal Medical Center, Devens ("FMC Devens"), a facility operated by the Federal Bureau of Prisons ("BOP"), alleging violations of his civil rights under 42 U.S.C. § 1983 in connection with his termination from a work assignment while he was an inmate at FMC Devens in 2014. Specifically, he asserts that he was fired from his clerk position in the Facilities Shop due to his race and/or national origin. He seeks $500 in compensatory damages for the amount of wages he would have earned during the remainder of his time at FMC Devens had he continued to work as a clerk in the Facilities Shop. Plaintiff also seeks $100,000 in punitive damages and injunctive relief in the form of an order compelling the BOP to adopt uniform procedures for the hiring and firing of prisoners at the Facilities Shop at FMC Devens.

Defendants, J. Grondolsky, Warden of FMC Devens; J. Cox., Manager of the Facilities Shop at FMC Devens, and Facilities Shop employees E. Santiago and D. Michaud, have moved for dismissal or summary judgment, asserting Plaintiff failed (1) to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq.*; (2) to effect proper service of process; (3) to meet the requirements for a *Bivens* claim; and (4) to allege any physical injury. As Plaintiff is proceeding *pro se* the court's analysis focuses on the substantive sufficiency of Plaintiff's claims. *See Hughes v. Rowe*, 449 U.S. 5, 10 (1980) (holding that the complaint of a *pro se* prisoner should be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed.'").

II.   LEGAL BASIS FOR CLAIMS

Plaintiff framed his claim as one brought pursuant to 42 U.S. § 1983. However, § 1983 allows suits against state entities and employees and is inapplicable to claims against federal entities and officials. A plaintiff can bring a suit against federal employees for constitutional violations, but only pursuant to the line of cases beginning with *Bivens v. Six Unknown Fed. Narcotics* Agents, 403 U.S. 388 (1971); *see also Carlson v. Green*, 446 U.S. 14, 18, 100 S. Ct. 1468, 1471, 64 L. Ed. 2d 15 (1980) ("*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right."). As Plaintiff is proceeding *pro se*, the court construes his claim as one made pursuant to *Bivens*.

III.    LEGAL STANDARD

A party moving to dismiss an action pursuant to Rule 12(b)(6) has the burden of demonstrating that the complaint lacks "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); Fed.R.Civ.P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Though "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," once a plaintiff has put forth "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal* at 679. To succeed on a motion to dismiss, the moving party must show the other party's assertions fall short of establishing at least one "element necessary to sustain recovery under some actionable legal theory." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir. 2005) (internal citation omitted).

IV.    BACKGROUND[1]

Plaintiff, a non-white, naturalized citizen,[2] was an inmate at FMC Devens from July of 2013 until early 2015. Defendant Santiago, the secretary in the Facilities Shop at FMC Devens ("Facilities"), hired Plaintiff to work as a clerk preparing inmate payroll. Plaintiff began work as a clerk in the Facilities Shop in May of 2014 and he received about $100 per month in compensation. During the time that he worked as a clerk, Plaintiff received positive evaluations of his work. While

---

[1] At this stage in the litigation, the court "accept[s] as true all well-pleaded factual averments in the plaintiff's . . . complaint and indulge all reasonable inferences therefrom in his favor." *Deniz v. Mun'y of Guaynabo*, 285 F.3d 142, 144 (1st Cir. 2014).
[2] Plaintiff does not specify his race or his country of origin in his complaint, stating only that he is "NOT white" and "a foreigner (even though he is a naturalized U.S. Citizen since 1980)." (Compl. 4, Dkt. 1.)

3

working, Plaintiff would write notes about the weather or sports on a white board in front of his desk. Defendant Michaud was the foreman of the electrical shop within the Facilities Shop and was not a direct supervisor of Plaintiff. At times, Defendant Michaud became upset with Plaintiff when Plaintiff wrote notes on the board regarding the Boston Red Sox and the New England Patriots. On many occasions Defendant Michaud asked Plaintiff to erase something from the white board. Plaintiff found Defendant Michaud's conduct upsetting and asked Defendant Santiago to transfer him to a different job at FMC Devens. Defendant Santiago refused to transfer Plaintiff at that time, telling him not to worry about Defendant Michaud because Plaintiff worked only for her. Plaintiff believes he was the only foreign-born individual working in the Facilities Shop at that time.

On September 19, 2014, Plaintiff received a punishment in connection with an interaction unconnected to his employment. The punishment caused Plaintiff to be reassigned to a Segregated Housing Unit ("SHU") for ten days and to have his email privileges suspended for thirty days after the date he returned from the SHU. The day after Plaintiff's ten-day stay in the SHU ended, Plaintiff reported to the Facilities Shop for work at 7 am, as he would have done prior to his time in the SHU. That morning, Defendant Santiago, who was normally cheerful was "morose and rude" to Plaintiff. She asked Plaintiff to wait outside her office for an hour. Approximately an hour later, Defendant Michaud came out of Defendant Santiago's office and informed Plaintiff that he had been fired. Plaintiff asked why he was being fired and Defendant Michaud refused to provide any reason. At 8:30 am, Plaintiff left Facilities without speaking with Defendant Santiago or Defendant Cox, the Manager of Facilities. Plaintiff was able to speak with Defendant Cox later that day. When Plaintiff asked Defendant Cox why he had been fired, Defendant Cox answered that Plaintiff did not work for him and he, Cox, had nothing to do with the firing. On multiple occasions, Plaintiff asked for an explanation from Defendant Santiago, but he never received a response. The firing was very upsetting and humiliating to Plaintiff. He was subsequently assigned window washing duties for

which he was paid $5.25 per month and was assigned to shovel snow; it is unclear what, if any, compensation he received for shoveling.

Plaintiff identified three white individuals who were able to resume working in the Facilities Shop following infractions for which part of their punishments included stays in the SHU. Plaintiff identified the individual areas within the Facilities Shop where each of these individuals was employed, but did not identify the specific jobs they held or offer any basis for concluding that they held positions similar to the one held by Plaintiff. Two of the three had stays in the SHU that were significantly longer than Plaintiff's ten-day stay. Based on the experiences of these three individuals, Plaintiff asserts the decision to terminate him was based on his race and/or national origin. He asserts a claim for $500 in lost wages and he seeks $100,000 in "punitive damages."

In October of 2014, Plaintiff filed a tort claim related to his termination with the BOP regional office in Philadelphia, Pennsylvania. He received no response. Plaintiff's complaint is silent as to whether Plaintiff properly exhausted any administrative procedures that could have provided relief. Defendants assert the BOP has a grievance procedure and that even though Plaintiff had successfully navigated the process to file other grievances, he never filed a grievance regarding his termination. In his opposition to Defendants' Motion to Dismiss, Plaintiff alleges he took the initial steps to file a grievance but could not complete the process because an FMC Devens employee, who is not named as a defendant in this suit, refused to provide him with the proper form on which to make his grievance.

Plaintiff filed this suit on February 23, 2015. On April 13, 2015, Magistrate Judge Robertson denied Plaintiff's motion for leave to proceed *in forma pauperis* based on Plaintiff's failure to supply required documentation regarding his financial situation. (Dkt. No. 6.) Judge Robertson's order allowed Plaintiff the opportunity to provide the missing documentation and renew his motion to proceed *in forma pauperis*. Instead, Plaintiff elected to pay the filing fee, which he did on May 5, 2015.

5

On May 18, 2015, Plaintiff filed six Proof of Service forms accompanied by Certified Mail Receipts indicating he had mailed a summons to J. Grondalsky, Warden at FMC Devens (Dkt. No. 15); the Springfield, MA U.S. Attorney's Office (Dkt. No. 16); the U.S. Attorney General (Dkt. No. 17); E. Santiago, Plaintiff's supervisor at the Facilities Shop (Dkt. No. 18); D. Michaud, foreman of the electrical shop within the Facilities Shop (Dkt. No. 19); and J. Cox, manager of the Facilities Shop (Dkt. No. 20). The Certified Mail Receipts show that the summons for each individual was sent to FMC Devens.

## V. DISCUSSION

This case raises a number of interesting issues including (1) how to determine whether a PLRA claim has been adequately exhausted when a plaintiff claims a prison employee interfered with his attempts to seek administrative remedies; (2) how service of process should be dealt with when a non-indigent, former inmate proceeding *pro se* seeks to sue prison employees in their individual capacity and when the defendants wait to allege improper service until five months after the plaintiff indicates his belief that he had provided proper service and eight months after the suit was filed; and (3) whether an inmate can recover in a *Bivens* action for violations of rights under the Fifth Amendment, even though the alleged violation did not entail a physical injury. Defendants assert that a resolution of any one of these issues would support dismissal in this case. Plaintiff, understandably, disagrees. However, even if the court were to resolve each of these issues in favor of Plaintiff, it would be left with the question of whether Plaintiff has alleged actions on the part of any individual defendant sufficient to state a claim for violations of his right to equal protection under the Fifth Amendment. The answer to that question is clearly no.

The types of claims that can be pursued under *Bivens* are subject to a number of limitations. Of particular relevance in this case, "[a] *Bivens* action only may be brought against federal officials in

6

their individual capacities" and, "[e]ven then, the plaintiff must state a claim for direct rather than vicarious liability." *Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir. 2000). In simplified terms, this means that a *Bivens* action can only proceed against a person for the actions of that particular person. A supervisor cannot be sued for the actions of a subordinate, but only for that supervisor's own conduct where a subordinate is liable and "the supervisor's action or inaction is 'affirmatively linked' to the constitutional violation caused by the subordinate." *Id.* at 29.

Thus the specific allegations against each defendant must be reviewed individually. The court begins with the allegations made against Defendant Michaud. Plaintiff seems to allege that Defendant Michaud either made the decision to terminate Plaintiff or convinced Defendant Santiago to do so based on Plaintiff's race or national origin. However, Plaintiff has not alleged facts from which such a conclusion can be reasonably inferred. Plaintiff describes interactions with Defendant Michaud that he found hostile; however, the facts in the complaint provide an insufficient basis to conclude that his hostility had anything to do with Plaintiff's race or national origin. The only specific information Plaintiff provides about hostile comments made to him by Defendant Michaud indicates that Defendant Michaud did not appreciate Plaintiff's messages related to professional sports and specific teams. Nor does it appear that Defendant Michaud was hostile only to Plaintiff or only to individuals of certain races or national origins. During the five months after Plaintiff's termination, three other inmates, whose races and national origins have not been identified, filled the clerk position. According to Plaintiff, they all had difficulties maintaining employment. One was fired by Defendant Michaud and another lasted for only one day. Their difficulties suggest the hostility experienced by Plaintiff was likely a consistent problem, rather than one arising only when an employee of a certain race or national origin was hired.

Plaintiff asks the court to infer a racial motivation from the fact that three other inmates, all of whom are white, were able to return to their jobs within the Facilities Shop after returning from

the SHU. Not only has Plaintiff not alleged that these inmates were allowed to return to jobs that were similar to Plaintiff's, as opposed to jobs that required different skills, he also has not alleged that Defendant Michaud was the one who made decisions with respect to the retention of all three of the other inmates. While the court can reasonably infer that Defendant Michaud was the decision maker with respect to the individual who returned to work in the electrical shop supervised by Defendant Michaud, such an inference cannot be made as to the others. Without more, Defendant Michaud's decision to allow one inmate, who was white, to keep his job in the electrical shop after returning from the SHU is not a sufficient basis for claims that any decisions or actions he took with respect to Plaintiff's termination were based on Plaintiff's race or national origin. The claims against Defendant Michaud will, therefore, be dismissed.

As there are insufficient allegations for claims against Defendant Michaud to proceed, any claims against any of the other defendants cannot proceed unless based on actions taken directly by those individuals; it is not enough that they may have provided insufficient training or oversight to Defendant Michaud because he cannot be found to have violated Plaintiff's rights to equal protection. Plaintiff has not alleged any conduct on the part of Defendants Grondolsky or Cox that would support a claim of discrimination against them. From the complaint, it appears that neither was the decision maker with respect to Plaintiff's termination. Therefore, the court will also dismiss the claims against Defendants Grondolsky and Cox.

The only remaining defendant is Defendant Santiago. The sum of the allegations Plaintiff makes with respect to her are that she hired Plaintiff, was generally a good supervisor, and refused to communicate with Plaintiff concerning his termination. These allegations clearly provide an insufficient basis for a claim that she terminated Plaintiff because of his race or national origin.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is hereby ALLOWED.

It is So Ordered.

    /s/ Mark G. Mastroianni

MARK G. MASTROIANNI

United States District Judge